UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

R.E.H. (XXX-XX-3232)                          CIVIL ACTION NO. 10-cv-0863

VERSUS                                        JUDGE HICKS

U.S. COMMISSIONER SOCIAL                      MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

# REPORT AND RECOMMENDATION

## Introduction

Plaintiff, who was born in 1968, has a high school education, and work experience as a certified nurse's assistant, applied for disability insurance benefits. She alleged disability beginning February 2006 based on mental health limitations. ALJ Leslie John Rodriguez held a hearing and issued a written decision that denied the claim. The Appeals Council denied Plaintiff's request for review, and she filed this civil action. Plaintiff argues that the Commissioner's decision should be reversed because the ALJ used an incorrect definition of a "modified" impairment and did not follow the special psychological technique required by the regulations. It is recommended, for the reasons that follow, that the Commissioner's decision be reversed and the case be remanded for further proceedings.

## Standard of Review; Substantial Evidence

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is

more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

The ALJ reviewed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 and § 416.920. Part of that process requires assessment of the claimant's residual functional capacity ("RFC"), which is the most the claimant can still do despite her mental and physical limitations. 20 C.F.R. § 404.1545. The ALJ found that Plaintiff had the RFC to perform the physical demands of all exertional levels of work. "However, her mental impairments result in problems with concentration, focus, and attention. She is limited to simple, routine mental tasks, and occasional contact with the public." Tr. 12. The ALJ, in another part of the decision, used slightly different language to describe the limitations. He said that it was "conceded that she has moderate limitations in social interaction and concentration that would prevent her from returning to her past relevant work as a certified nurse's assistant or security guard. Tr. 14.

Vocational expert ("VE") Charles Smith testified at the hearing to provide evidence regarding whether Plaintiff could perform her past relevant work (step four) or other work available in the economy (step five). The ALJ asked the VE to consider a hypothetical

person with Plaintiff's education, training, and ability to work at all exertional levels. He then set forth a number of non-exertional mental limitations, as follows:

> I want you to consider moderate non exertional limitations with moderate defined as a moderate limitation in the area but the individual is still able to function satisfactorily. I want you to consider moderate as follows; moderate in the ability to understand and remember detailed instruction; in the ability to carry out detailed instructions; in the ability to maintain attention and concentrate for extended periods. Moderate in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. I want you to also consider moderate in the ability to ask simple questions or request assistance. I want you to consider moderate in the ability to accept instructions and respond appropriately to criticism from supervisors. And moderate in the ability to respond appropriately to changes in the work setting.

The VE testified that a person with those limitations could perform Plaintiff's past relevant work. Tr. 37-38. The ALJ, however, stated in his written decision that Plaintiff's moderate limitations in social interaction and concentration cast doubt on that possibility, so he proceeded to step five. Tr. 14.

Relevant to step five, the VE was asked if there was other work the hypothetical person could perform. He identified garment sorter (374,741 jobs in the national economy; 4,284 in Louisiana), a light, unskilled job. The VE also identified document preparer (63,480 jobs in the national economy; 878 in Louisiana), a sedentary job. Tr. 38. The ALJ asked if the person could perform those jobs if she had no useful ability to get along with strangers in the workplace. The VE replied that the jobs identified would not be impacted. The ALJ asked if it would affect the ability to do the jobs if the person had no useful ability to pay attention and concentrate, and the VE replied that it would eliminate all positions. Tr. 40.

The record before the ALJ included consultative evaluations by Thomas Staats, Ph.D. and Mark Dulle, Ph.D., and a mental RFC assessment by state agency medical consultant David Atkins, Ph.D. Dr. Atkins checked boxes on Form 4734 to indicate whether Plaintiff was not significantly limited, moderately limited, or markedly limited in various abilities. He indicated that Plaintiff was moderately limited in the various areas mentioned in the ALJ's question to the VE. He found that she was not significantly limited in the other areas. Tr. 155-57.

Plaintiff argues that the ALJ adopted the moderate limitations in Dr. Atkins' report but then incorrectly defined a moderate limitation when he posed his questions to the VE. Plaintiff argues that Dr. Atkins, based on instructions in the Agency's Program Operations Manual System ("POMS") for completing Form 4734, employed a different understanding of a moderate limitation, thus eliminating his report as substantial evidence for the ALJ's decision. Plaintiff's argument is based on two forms used by the Agency, a provision in the Agency's Program Operations Manual System, and the lack of a detailed definition of "moderate" in the regulations. The argument is described in detail in Johnson v. Astrue, 2009 WL 536603, *4 (W.D. La. 2009).

A claimant presented a similar argument to the Fifth Circuit in Cantrell v. McMahon, 227 Fed. Appx. 321 (5th Cir. 2007). The ALJ in that case defined moderate in his decision and in interrogatories to the VE as meaning "there are some moderate limitations, but the person can still perform the task satisfactorily." That is essentially the same definition

employed in the questions posed to the VE in this case. The Court responded to the argument as follows:

> Cantrell claims that, because "moderate" falls between "mild" and "marked", which are defined in the regulations, it should indicate a greater degree of limitation than that in the ALJ's definition. Although the term "moderate" is not defined in the regulations or the Program Operations Manual System, Cantrell does not show the definition used by the ALJ conflicts with either. "Marked" is defined as "more than moderate but less than extreme". 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(c). Accordingly, "moderate" is less severe and was not used in a manner inconsistent with the regulations.

Plaintiff argues that this case is different. She argues that moderate is defined in the POMS instructions for Form 4734 as "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." Plaintiff then looks at the POMS definitions of the terms "not significantly limited" and "markedly limited" and concludes that, by implication, the claimant must be either unable to consistently perform the activity or unable to usefully perform the activity for the moderately limited box to be checked. She reasons that this *implied* definition would have been used by Dr. Atkins. The ALJ's decision is not supported by substantial evidence, Plaintiff argues, because he found moderate limitations based on Dr. Atkins report, but the definition used by Dr. Atkins suggested a more serious limitation than the ALJ's definition of moderate.

The court need not delve deeper into that argument because an interrelated issue, the difference between the RFC found by the ALJ and the hypotheticals posed to the VE, prevents the court from finding that the decision is supported by substantial evidence. Testimony from a VE may provide substantial evidence with respect to the inquiries at step

five, but reversal may be required if the ALJ poses a defective hypothetical question to the VE. "Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a defective question cannot stand." Bolling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994). See also Boyd v. Apfel, 239 F.3d 698, 707 (5th Cir. 2001).

The ALJ found in his written decision that Plaintiff's problems with concentration, focus, and attention limited her to simple, routine mental tasks, and occasional contact with the public. He did not ask the VE to assume a person with such limitations. Rather, he described a person with moderate limitations in areas such as the ability to carry out detailed instructions, maintain attention and concentrate for extended periods, and deal appropriately with the general public. He defined moderate as a moderate limitation in the area but with the individual still able to function satisfactorily.

It appears, from reviews of several cases involving the moderate limitation, that VEs often see this definition of a moderate limitation as precluding few, if any, jobs. In any event, it does not sound to the undersigned to suggest a person who is so limited she can perform only simple, routine mental tasks. Perhaps the VE understood the hypothetical to suggest such a person, but it is quite reasonable to believe that he did not. Given the lack of

consistency between the language the ALJ used in his written decision to describe Plaintiff's RFC and the language in the hypothetical question to the VE, the ultimate decision is deprived of substantial evidence.

A reversal and remand will allow the Commissioner the opportunity to clarify the record in this regard. It will also permit further exploration of the impact, if any, a moderate limitation has on available jobs. A VE's commentary on that issue might assist in addressing whether the definition now used by the Agency is valid. Of course, Plaintiff and the Agency may further explore other issues related to the claim, even if they were not raised in the prior administrative proceedings or this civil action. See 20 C.F.R. § 404.983.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed and this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the court's decision.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 26th day of July, 2011.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE